IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

W<small>OODLAND</small> I<small>NVESTOR</small> M<small>EMBER</small>, L.L.C.,

    Plaintiff,

vs.                                                Case No. 11-CV-2013-JTM

S<small>OLDIER</small> C<small>REEK</small>, L.L.C., et. al.,

    Defendants.

MEMORANDUM AND ORDER

Before the court is defendants' Motion to Dismiss (or, in the Alterative, Stay Proceedings) pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. No. 18). For the following reasons, the court denies the motion.

**I. Factual Background**

This case arises out of an agreement between Soldier Creek, L.L.C. ("Soldier Creek") and plaintiff's predecessor-in-interest, National Equity Fund Assignment Corporation ("NEFAC"). NEFAC and Soldier Creek entered into an Amended and Restated Operating Agreement ("Operating Agreement") around May 2007, for the development and management of Woodland Park, L.L.C. ("Woodland Park"). The purpose of the Operating Agreement was to acquire, construct, own, finance, lease and operate a low income housing project to be known as "Woodland Park at Soldier Creek Apartments."

NEFAC agreed, with conditions, to provide certain capital contributions to Woodland Park,

and took a ninety-nine percent ownership interest in it. Soldier Creek agreed to meet certain conditions related to the management and construction of the project. Hersh Development Co., L.L.C., George M. Hersh, II, Brian C. Hersh, and John M. Hersh all executed a "Guaranty Agreement" for the benefit of NEFAC and Woodland Park, guarantying some of Soldier Creek's obligations under the Operating Agreement.

On or about November 9, 2007, NEFAC transferred its right, title and interest in Woodland Park, the Operating Agreement, and the Guaranty Agreement to National Affordable Housing Fund I, L.P. ("NAHF"). On or about December 30, 2010, NAHF transferred its right, title and interest in Woodland Park to the plaintiff, Woodland Investor Member L.L.C. ("WIM").

WIM brought this action on January 10, 2011, alleging Soldier Creek breached the Operating Agreement when "Breakeven Operations" did not occur by February 1, 2009. WIM alleges that pursuant to the Operating Agreement, the breach requires Soldier Creek to purchase WIM's interest in Woodland Park, and that Soldier Creek has not done so. WIM also alleges that under the Guaranty Agreement, WIM is entitled to recover from Hersh Development, George Hersh, Brian Hersh, and John Hersh, for Soldier Creek's breach. Soldier Creek has brought a counterclaim alleging breach by WIM's predecessor-in-interest NEFAC.

Soldier Creek moves to dismiss or stay proceedings in light of parallel state proceedings, citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Soldier Creek notes that on July 31, 2009, Woodland Park's general contractor, Neighbors Construction Co., Inc., ("Neighbors") sued Woodland Park, NEFAC, Soldier Creek, and various others[1] seeking a

---

[1] JRMA Architects, Inc., James R. Marshall, Hersh Development Co, L.L.C., National Equity Fund, Inc., Wells Fargo Bank, N.A., Shawnee County Board of County Commissioners, and Kansas Housing Resources Corporation.

mechanic's lien and declaratory judgment for nonpayment of services rendered under Neighbors's contract with Woodland Park.[2]

On May 13, 2011, following a stay to allow resolution of claims subject to arbitration, the state court confirmed an arbitration award in favor of Neighbors. Soldier Creek argues that Neighbors's claims in its suit against Woodland Park and NEFAC are essentially the same as those in Soldier Creek's counterclaim against WIM under the Operating Agreement between Soldier Creek and NEFAC, and now NEFAC's successor-in-interest WIM.

**II. Legal Standard**

Soldier Creek seeks dismissal under the *Colorado River* abstention doctrine. Parties often present *Colorado River* abstention in the form of a Fed. R. Civ. P. 12(b) motion to dismiss. *See, e.g., Empr's Mut. Cas. Co. v. Miner*, 6 F. Supp.2d 1232 (D. Kan. 1998). However, a motion to abstain based on a concurrent case pending in state court does not fall under any enumerated provision of 12(b). *Health Care & Retirement Corp. of Am. v. Heartland*, 324 F. Supp.2d 1202, 1203 n.1 (D. Kan. 2004). Further, such a motion does not seek summary judgment on a claim and, therefore, is not governed by Fed. R. Civ. P. 56. *Id*.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River*, 424 U.S. at 813. The doctrine of abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same

---

[2]The Complaint also alleged fraud, Kansas Property Payment Act violations, breach of good faith and fair dealing, negligence, unjust enrichment, quantum meruit, attachment, conspiracy, and breach of contract.

matter" in a federal court with jurisdiction. *Colorado River*, 424 U.S. at 817 (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1964)). Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given them. *Id*.

The *Colorado River* doctrine[3] allows federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" when the federal court would otherwise have contemporaneous and concurrent jurisdiction with the state court. *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994). This may be done based on principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *See Colorado River*, 424 U.S. at 817 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

Thus, in order for a stay or dismissal to even be considered under the *Colorado River* doctrine, the pending state suit must be parallel to the federal suit. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081 (citing *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

If the state and federal suits are parallel, a second stage of inquiry remains. The federal court may only stay or dismiss the federal suit "for reasons of wise judicial administration" *Id*. (quoting *Colorado River*, 424 U.S. at 817). Such abstention from the federal courts' jurisdictional mandate is appropriate only in exceptional cases that satisfy the standard prescribed in *Colorado River*. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). A court may abstain upon consideration of a non-exhaustive number of factors, including: (1) the inconvenience of the

---

[3] The *Colorado River* doctrine is not a true form of abstention but is often treated as a variety of it. *Fox v. Maulding*, 16 F. 3d 1079, 1080 (10th Cir. 1994).

federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which the courts assumed jurisdiction; and (4) whether either court has assumed jurisdiction over the property. *Moses H. Cone,* 460 U.S. at 15-16; *Colorado River,* 424 U.S. at 818; *Fox*, 16 F.3d at 1082. Other factors that have been considered are the vexatious or reactive nature of the federal action, whether federal law provides the rule of decision, and the adequacy of the state court action to protect the federal plaintiff's rights. *Moses H. Cone*, 460 U.S. at 17 n.20, 23, 28.

No one factor is necessarily determinative. *Colorado River*, 424 U.S. at 818. The weight given to any one factor may vary greatly from case to case. *Moses H. Cone*, 460 U.S. at 16. The factors are to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. *Id*. at 21. Only the clearest of justifications will warrant dismissal. *Colorado River*, 424 U.S. at 819. A stay is as much a refusal to exercise federal jurisdiction as a dismissal. *Moses H. Cone*, 460 U.S. at 28.

**III. Analysis**

As an initial matter, Neighbors's suit against Woodland Park and NEFAC is not parallel to WIM's suit against Soldier Creek. In order to be parallel, substantially the same parties must be litigating substantially the same issues. *Fox*, 16 F.3d at 1081. Soldier Creek argues NEFAC, NAHF, and WIM are affiliated and controlled by the same organization, and are, thus, substantially the same party. WIM argues that, although NEFAC, Woodland Park, and Soldier Creek are all defendants in Neighbors's suit, other parties are joined in that lawsuit that are not joined here, and vice versa. This court assumes that due to WIM's ninety-nine percent interest in Woodland Park, the interests of WIM and Woodland Park are congruent to the extent necessary to consider *Colorado River*

abstention. *See Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985).

If we assume the litigating parties are substantially the same, Soldier Creek's motion still fails because the parties are not litigating substantially the same issues. In the state case, Neighbors seeks compensation for a breach involving non-payment by Woodland Park in a construction contract. In this case, WIM seeks damages for an alleged breach of its Operating Agreement with Soldier Creek, and Soldier Creek claims WIM's predecessor-in-interest breached first.

These disputes involve different contracts with very different issues. A large portion of Neighbors's construction contract dispute has been arbitrated. Whether NEFAC or any of its successors-in-interest breached its Operating Agreement with Soldier Creek has neither been an issue nor a defense in Neighbors's dispute with Woodland Park, as far as the court can discern. If a possible breach of the Operating Agreement was at issue during arbitration, the state court noted it could not consider the evidence presented to the arbitrator in Woodland Park's application to vacate the arbitrator's findings.

But, for the purposes of discussion, even if the parties are the same in the two suits, and substantially the same issues are being litigated, this court is not convinced "exceptional circumstances" exist sufficient to defer its jurisdiction over this action. Soldier Creek has not argued the federal forum is inconvenient, or that this litigation is vexatious. *See Moses H. Cone*, 460 U.S. at 17 n.20; *Colorado River*, 424 U.S. at 818. The state court action, a complaint by Neighbors on its separate construction contract, is quite likely insufficient to protect WIM's ability to make a claim against Soldier Creek based on the Operating Agreement.

Soldier Creek argues at length that granting its motion for a dismissal or stay will avert piecemeal litigation. Soldier Creek, quoting from *Romine v. Compuserve*, 160 F.3d 337, 341 (6th

Cir. 1998), says that "[p]iecemeal litigation occurs when different courts adjudicate the *identical* issue, thereby duplicating judicial effort and potentially rendering conflicting results." Dkt. No. 23, at 5 (emphasis added). While legally sound, this gives the game away. Even Soldier Creek admits in its supporting memo that the ultimate cause directly at issue in the *Neighbors* case "*may* be dispositive or, at the very least, inform on the parties claims regarding breach of the Operation Agreement." Dkt. No. 23, at 3. If the ultimate cause in the *Neighbors* case may *not* be dispositive in this case, it follows that the issue is not identical. These uncertain odds are not enough under the *Colorado River* doctrine in which "[o]nly the clearest of justification will warrant dismissal." *See Colorado River*, 424 U.S. at 819.

Certain factors weigh in favor of Soldier Creek's motion: state law would provide the rule on this contract action, the state court may well have assumed jurisdiction before this federal court did, and the state court has acquired jurisdiction over property in which the parties have interest.[4] Nevertheless, the movant has not met its significant burden. *See id*. For the foregoing reasons, Soldier Creek's motion is denied. *See Reinhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999) ("[S]uits in federal court are not easily swept away by *Colorado River.*").

IT IS ACCORDINGLY ORDERED this 3rd day of October 2011, that defendants' Motion to Dismiss (or, in the Alterative, Stay Proceedings) (Dkt. No. 18) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

[4] Property liens have been asserted by Neighors, and Wells Fargo Bank has brought action in state court to foreclose on its construction loan for the Woodland Park property.